IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARON LEE BOYD-NICHOLSON,<br><br>        Plaintiff,<br><br>vs.<br><br>STEPHANIE SNODGRASS, LpN; and APRIL ROLLINS, RN;<br><br>        Defendants. | 8:15CV424<br><br>MEMORANDUM AND ORDER |

Before the court are the parties' cross-motions for summary judgment on Plaintiff Aron Lee Boyd-Nicholson's ("Boyd-Nicholson") claim that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Boyd-Nicholson's request for appointment of counsel. (Filing Nos. 35, 42, 62.) Defendants assert qualified immunity as a defense. (Filing No. 36.) For the following reasons, the court will stay the parties' cross-motions and appoint Boyd-Nicholson counsel.

## I. CONTENTIONS OF THE PARTIES[1]

Boyd-Nicholson is and was at all relevant times a prisoner at the Lincoln Correctional Center. On an unknown date, Boyd-Nicholson suffered a heart attack requiring cardiac catheterization and the placement of a stent. Those procedures took place on either August 17th or 18th in 2015 at Bryan East Hospital, and Boyd-Nicholson was discharged on August 19th. (Filing No. 1 at CM/ECF p. 4; Filing No. 63 at CM/ECF pp. 7, 16-19.) On August 11, 2015, Boyd-Nicholson experienced chest pains, nausea, dizziness, sweating, and shortness of breath.

---

[1] The following is merely a summation of the parties' versions of events. The court makes no finding at this time about whether any material fact is in "genuine dispute" or properly supported or addressed under Fed. R. Civ. P. 56.

([Filing No. 1 at CM/ECF p. 3](#); [Filing No. 16 at CM/ECF pp. 1-2](#).) In response, a nurse in the medical clinic treated Boyd-Nicholson for hypoglycemia and told him to notify staff if "this happens again." ([Filing No. 63 at CM/ECF p. 4](#).)

Boyd-Nicholson alleges that, on August 12, 2015, he returned with the diabetic inmates to the medical clinic, where he explained to Defendants that he still suffered from chest pains, nausea, sweating, dizziness, and shortness of breath. ([Filing No. 1 at CM/ECF pp. 3-4](#); [Filing No. 16 at CM/ECF pp. 2-3](#).) Boyd-Nicholson alleges that Defendants ignored his complaints. (*Id*.) Defendants do not directly deny that Boyd-Nicholson was in the medical clinic that day. Rather, they maintain that the Nebraska Department of Correctional Services keeps records of when inmates go to the medical clinic and that there is no record that Boyd-Nicholson was there on August 12th. ([Filing No. 36-3](#).) Defendants both swear that they "did not hear Mr. Boyd speak [to them] regarding his condition on August 12, 2015." ([Filing Nos. 36-1](#), [36-2](#).) Yet, and somewhat in contradiction, both Defendants swear that Boyd-Nicholson did not inform them of his symptoms; that they did not hear him ask for help; and that, if they had known of his symptoms, they would have taken remedial steps to help him. (*Id*.)

There is a cryptic note in Boyd-Nicholson's prison medical records dated August 12, 2015, with an apparent signature of a physician's assistant but no remarks. ([Filing No. 63 at CM/ECF p. 4](#).) There is another cryptic note dated September 1, 2015, stating: "Discussed routine procedure for chest pain and reassured that nursing had been spoke to and steps taken to address how his initial contact had been handled." (*Id*. at CM/ECF p. 8.)

Boyd-Nicholson alleges that Defendants exhibited deliberate indifference when they failed to treat him and delayed his treatment. He claims that, as a result, he suffered prolonged pain and suffering, permanent heart damage, chronic chest pains, and future medical issues and needs. ([Filing No. 16 at CM/ECF p. 3](#).) The court does not have Boyd-Nicholson's medical records from Bryan East.

## II.  LIMITED DISCOVERY

The court previously granted in part, and denied in part, Boyd-Nicholson's unopposed Rule 56(d) Motion for Limited Discovery. (Filing No. 50.) In his motion, Boyd-Nicholson sought specific discovery to resist Defendants' summary judgment motion. Specifically, he sought to discover video evidence and an affidavit and incident report of a former case worker to establish or to at least create a genuine dispute as to whether he was in the medical clinic on August 12, 2015. He claimed that Alberto Vasquez, an inmate transferred to another facility, witnessed his exchange with Defendants. He also sought to discover his medical records to show the detrimental effect on his heart due to the delay in treatment. (Filing No. 49.) The court granted Boyd-Nicholson two of his requests: (1) the incident report written by Case Worker Chris Bartek on August 12, 2015, and (2) the written deposition of inmate Alberto Vasquez #72373 pursuant to Fed. R. Civ. P. 31. (Filing No. 50.) Vasquez would not answer the questions, responding that "he remembered the incident, but not any specifics like the court is asking for." (Filing Nos. 58, 58-1.)

The court found limited discovery complete and ordered Boyd-Nicholson to file a response to Defendants' summary judgment motion along with any dispositive motion of his own. (Filing No. 59.) His response and summary judgment motion included the previously-mentioned prison medical records. (Filing No. 63.) Strangely, Defendants did not produce those records. The court now revisits its initial order on limited discovery[2] in conjunction with Boyd-Nicholson's request for counsel.

---

[2] A district court has "wide discretion" in ruling on a Rule 56(d) motion. *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (citation omitted).

# III.  DISCUSSION

The Eighth Amendment requires state prison officials to provide inmates with needed medical care. *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (citation omitted). Since Boyd-Nicholson's failure-to-treat and delay-in-treatment claims are inextricably intertwined, the court will concentrate on his delay-in-treatment claim because it logically appears to be the last alleged wrongful act.

To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety. *Id.* (quotations and citations omitted). Because Boyd-Nicholson's deliberate-indifference claim is largely, but not exclusively, based on "a delay in medical treatment," the court measures "the objective seriousness of the deprivation ... by reference to the effect of delay in treatment." *Id.* (quotations and citations omitted). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment [.]'" *Id.* at 1119-1120 (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

The court is not comfortable proceeding on the cross-motions for summary judgment, particularly the issue of qualified immunity, without appointing counsel to Boyd-Nicholson. Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). This case is legally and factually very complex given the nature of Boyd-Nicholson's medical claims. Boyd-Nicholson has figuratively hit a roadblock at every turn in his attempts to gather evidence to support his claims. Particularly concerning to the court is that Defendants do not directly deny that Boyd-Nicholson was in the medical clinic on August 12, 2015, but they also do not remember seeing him there, and now cryptic

notes in Boyd-Nicholson's prison medical records might suggest otherwise. The court believes that, with the aid of counsel, Boyd-Nicholson will have the opportunity to discover any evidence there is to support his claims, particularly here where the medical records from Bryan East are necessary to assess whether any delay in treatment harmed Boyd-Nicholson. In short, counsel will enable Boyd-Nicholson to navigate Fed. R. Civ. P. 56 and ensure that he is not "unfairly thrown out of court by a premature motion for summary judgment." *Jackson*, 815 F.3d at 1121 (quotation and citation omitted).

## IV. APPOINTMENT OF COUNSEL

The court has consulted with Chief Judge Smith Camp and she has agreed that the Federal Practice Fund may be used to assist with the appointment of counsel. Marnie A. Jensen and her law firm Husch Blackwell have graciously agreed to accept an appointment in this case. Accordingly,

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion to Appoint Counsel (Filing No. 42) is granted. With thanks for accepting the appointment, Marnie A. Jensen and the law firm Husch Blackwell are hereby appointed to represent Plaintiff Aron Lee Boyd-Nicholson.

2. Ms. Jensen and/or any other counsel from the law firm Husch Blackwell are directed to promptly enter their appearance as counsel in this case.

3. Upon entry of counsel's appearance in CM/ECF, the clerk of the court shall immediately pay from the Federal Practice Fund the sum of $1,000 to the law firm Husch Blackwell.

4. A second and the last installment of $1,000 shall become due and payable to the law firm Husch Blackwell upon the entry of judgment or other closing documents in the case.

5. Counsel may incur reasonable expenses when representing Plaintiff in accordance with parts III(A), VI(C), and VI(E) of the *Amended Plans for Administration of the Federal Practice Fund and Federal Practice Committee*.[3] *See also* NEGenR 1.7(g) and NECivR 54.3-54.4.

6. Should Plaintiff succeed and counsel is awarded attorney fees and expenses that exceed $2,000 plus expenses, they shall reimburse the Federal Practice Fund for the fees and expenses paid from the fund.

7. At the direction of the court, this case will remain on the pro se docket. If this case proceeds to trial, the court will issue an order that the case be removed from the pro se docket and reassigned to another judge according to the normal operating procedures of the court in such cases.

8. Counsel for Plaintiff is initially appointed to (1) conduct limited discovery pursuant to Fed. R. Civ. P. 56(d), and (2) brief, and argue if necessary, a response to Defendants' summary judgment motion. **Counsel will have 150 days from the date of this Memorandum and Order to complete limited discovery and to file a responsive brief. Defendants will have 30 days to file a response. Counsel may exercise their discretion with regard to Plaintiff's current summary judgment motion. Should this case proceed to trial, counsel is obligated to continue to represent Plaintiff. The appointment will not extend to any appeal after trial.**

9. The clerk's office is directed to set a pro se case management deadline using the following text: **February 12, 2018**: check for Plaintiff's responsive brief.

---

[3] http://www.ned.uscourts.gov/internetDocs/pom/crtplans/fedpract.pdf

10. The cross-motions for summary judgment ([Filing Nos. 35](), [62]()) are stayed pending resolution of the matters in paragraph 8.

11. The clerk's office shall provide Plaintiff, Ms. Jensen, counsel for Defendants, and Chief Judge Smith Camp with a copy of this Memorandum and Order.

Dated this 15th day of September, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge